| R 104 (Rev. 2/92) | **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (COURT USE ONLY) |
|---|---|---|

| PLAINTIFFS  Roger Dale Gossett / Wamda Kay Gossett | DEFENDANT  Auto Bank |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.) Robert H. Cooper / The Cooper Law Firm / 3523 Pelham Road, Ste B / Greenville SC 29615  (864) 271-9911 | ATTORNEYS (If known) |

PARTY (Check one box only)    ☐ 1 U.S. PLAINTIFF    ☐ 2 U.S. DEFENDANT    ☒ 3 U.S. NOT A PARTY

**CAUSE OF ACTION**

COMPLAINT SEEKING TURNOVER OF PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. SECTION 542 AND REQUEST FOR DAMAGES TO INCLUDE PUNITIVE DAMAGES

**NATURE OF SUIT**
(Check the one most appropriate box only.)

| | | |
|---|---|---|
| ☒ 454 To Recover Money or Property | ☐ 455 To revoke an order of confirmation of a Chap. 11, Chap. 12, or Chap. 13 Plan | ☐ 456 To obtain a declaratory judgement relating to any of foregoing cause of action |
| ☐ 435 To Determine Validity, Priority, or Extent of a Lien or other Interest in Property | ☐ 426 To determine the discharge ability of a debt 11 U.S.C. §523 | |
| ☐ 458 To obtain approval for the sale of both the interest of the estate and of a co-owner in property. | ☐ 434 To obtain an injunction or other equitable relief | ☐ 459 To determine a claim or cause of action removed to a bankruptcy court |
| ☐ 424 To object or revoke a discharge 11 U.S.C. §727 | ☐ 457 To subordinate any allowed claim or interest where such subordination is provided within a plan | ☐ 498 Other (specify) |

ORIGIN OF PROCEEDINGS (Check one box only.)   ☒ 1 Original Proceeding   ☐ 2 Removed Proceeding   ☐ 4 Reinstated Or Reopened   ☐ 5 Transferred from Another Bankruptcy Court   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

| DEMAND | NEAREST THOUSAND $ | OTHER RELIEF SOUGHT | ☐ JURY DEMAND |
|---|---|---|---|

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

| NAME OF DEBTORS  Roger Dale Gossett / Wanda Kay Gossett | BANKRUPTCY CASE NO. 09-02328 |
|---|---|
| DISTRICT IN WHICH CASE IS PENDING  SOUTH CAROLINA | DIVISIONAL OFFICE  SPARTANBURG, SOUTH CAROLINA | NAME OF JUDGE  Helen Elizabeth Burris |

**RELATED ADVERSARY PROCEEDING (IF ANY)**

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |

FILING FEE    ☐ FEE ATTACHED    ☒ FEE NOT REQUIRED    ☐ FEE IS DEFERRED

| DATE 4/7/2009 | PRINT NAME  ROBERT H. COOPER, DCID# 5670 | SIGNATURE OF ATTORNEY (OR PLAINTIFF)  /s/ Robert H. Cooper |
|---|---|---|

UNTIED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Roger Dale Gossett, and<br>Wanda Kay Gossett<br>308 Ridgeover Drive<br>Greenville, SC 29617<br><br>　　　　Debtors,<br><br>Roger Dale Gossett, and<br>Wanda Kay Gossett<br>308 Ridgeover Drive<br>Greenville, SC 29617<br><br>　　　　Plaintiffs,<br><br>v.<br><br>Auto Bank<br>2518 White Horse Road<br>Greenville, SC 29611<br><br>　　　　Defendant. | Case No. 09-02328<br><br>Chapter 13 |

**COMPLAINT SEEKING TURNOVER OF PROPERTY OF THE ESTATE PURSUANT TO 11 U.S.C. SECTION 542 AND REQUEST FOR DAMAGES TO INCLUDE PUNITIVE DAMAGES**

　　The above named Plaintiffs now come before this Honorable Court by and through their counsel seeking an Order from the Court commanding the above named defendant to immediately turnover to the plaintiffs a vehicle it repossessed the day prior to the filing of the plaintiffs' chapter 13 petition. Further, the plaintiffs seek in such Order or by separate Order monetary relief from the defendant in the form of sanctions to include actual damages, attorney's fees, costs, damages for emotional distress, and punitive damages.

**Plaintiffs would respectfully show unto this Honorable Court the following:**

1. The plaintiffs are debtors in the above-captioned case by virtue of their having filed a chapter 13 petition on March 27, 2009. This Court has jurisdiction over this proceeding, which arises pursuant to 28 U.S.C. section 1334, and 11 U.S.C. section 157. This proceeding is a core proceeding.

2. The debtors/plaintiffs ("hereafter called plaintiffs") are citizens and residents of Greenville, South Carolina.

3. The defendant is upon information and belief a business entity conducting business in Greenville County, South Carolina.

4. The plaintiffs are indebted to the defendant by virtue of a sales contract for the purchase of a 1995 Chevrolet Suburban vehicle upon which the defendant has a lien.

5. Two days prior to the filing of the petition, creditor Auto Bank, whose address is 2518 White Horse Road, Greenville, SC 29611 inquired of debtors and debtors' attorney of whether or not a bankruptcy had in fact been filed. Debtor and attorney advised that the petition was being prepared.

6. On March 26, 2009, creditor's repossession agents appeared at debtors home conducting themselves in a belligerent, arrogant and aggressive manner demanding the possession of a 1995 Chevrolet Suburban vehicle upon which creditor holds a lien.

7. Roger Gossett, who is disabled, advised the repossession agents that he did not want them to take the vehicle, that he and his wife had an attorney preparing a bankruptcy filing, and that the vehicle was the sole vehicle in the family, which was the sole transportation for him, his employed wife, and their eleven year old son.

8. The repossession agents retained by creditor became aggressive, belligerent, and threatening making debtor, Roger Gossett fear for his safety.

9. Debtor Roger Gossett, therefore, telephoned his bankruptcy attorney to advise of the occurrences, and said undersigned attorney advised debtor to demand that the agents not take the vehicle. Debtor did so, yet agents in a further threatening manner ignored debtor's requests to not take the vehicle, and refused to get on the phone to discuss the matter with said attorney. Said agents made disparaging statements to debtor, and took the vehicle in spite of debtor's request that they not do so, thereby, breaching the peace.

10. Shortly after the incident, debtor Roger Gossett became disoriented, ill, and began shaking uncontrollably, and was in fear of his health due to the incident. His attorney advised him to calm down, take medication, and to seek emergency room assistance; however, the debtor was unable to do so, because the vehicle that had been taken was the sole vehicle in the household, which caused the disabled debtor to become further and violently ill.

11. Because the debtor's wife was unable to return from her employment as a private duty nurse, upon being advised by her husband that the vehicle had been repossessed in such an unpeaceful manner, she began to become agitated as her husband was extremely ill, and as she was unable to leave her employment to assist him.

12. Because the husband was unable to pick his wife up from work and transport her to their home after her employment, both debtors began aggressively seeking transportation for wife to return home after work, which caused further anguish and embarrassment.

13. The undersigned attorney immediately contacted creditor s staff members "Donna" and "Shane Hall" to discuss the matter, and request the return of the vehicle explaining bankruptcy law, the fact that the vehicle was the sole vehicle within the household, that the debt would be paid within the chapter 13 plan, and that the petition would be immediately filed, and that the vehicle was absolutely necessary for an effective reorganization as it was the sole vehicle

for the husband, wife, and eleven year old son. Both parties ignored attorney's request for the return of the vehicle, including attorney's request that they seek counsel of a bankruptcy attorney and in spite of the undersigned's request that a lawsuit be avoided.

14. The following day on March 27, 2009, the undersigned filed the chapter 13 petition, and his paralegal and he advised creditor that same had been filed, and once again requested the return of the vehicle, yet creditor refused to release same. Attorney's paralegal, Tamekia H. Higgins, telephoned creditor's agents "Donna" and "Shane Hall" to again request return of the vehicle faxing a copy of the petition and insurance proof. Both agents refused to release the vehicle in spite of attorney's office once again explaining bankruptcy law, and requesting that creditor agents contact a bankruptcy lawyer of their choice for advice regarding the issue. Again, creditor's agent refused to do so.

15. On March 28, 2009, attorney received call from Mr. Gossett advising he needed to obtain personal items from the repossessed vehicle. Attorney advised him to go to the defendant's place of business with at least one witness to request the release of personal items from the vehicle. He did so, and the defendant refused to release both the vehicle, and even refused to release any personal items. The debtor requested that the creditor release personal items including his 11 year old son s baseball equipment as his practice was to be Monday, March 30, 2009; however, the agents named above again refused.

16. On Monday, March 30, 2009, after receiving multiple telephone calls from debtor husband, who appeared to be extremely agitated and ill stating he and wife had not been able to sleep all weekend due to the constant worry about how she would transport to and from her home health nursing job, and in fear that she may lose that job and the income therefrom, attorney Robert Cantrell of the Cooper Law Firm telephoned the creditor s agent, Shane Hall to once again request that the vehicle be released and again advising that the law firm and debtors did not wish to be forced to file a lawsuit, but would be forced to do so if agent continued to refuse to release the vehicle necessary for an effective reorganization. Mr. Hall refused again to release the vehicle.

17. On Tuesday, March 31, 2009, the debtors contacted the undersigned attorney to advise they had been unable to sleep for several days due to the situation, and that both were in fear that without any transportation they feared that wife may lose her job, and that they had nightmares regarding their 11 year old son having some type of medical emergency with them being unable to transport him to the hospital. This created severe emotional distress within the couple.

18. On Wednesday, April 1, 2009, after exhausting all available remedies regarding attempts to have the creditor release the sole household vehicle, the undersigned had no choice but to prepare a draft motion requesting the relief sought advising creditor that it had willfully withheld property of the estate that is necessary for an effective reorganization, and has willfully disregarded the rights of the debtors subjecting creditor to sanctions including actual damages, attorney s fees, and punitive damages.

19. On April 2, 2009, at the direction of the undersigned, attorney Robert Cantrell forwarded a copy of the draft motion via facsimile to the defendant as a courtesy to allow said defendants' agents to review the allegations and the law pertaining to the lawsuit that would be filed. Both hoped that the lawsuit could be avoided.

20. However, as of April 8, 2009, neither the undersigned attorney nor the debtors had received any response from the defendant. Therefore, the complaint was filed.

21. Since the repossession of the vehicle, the debtors first had to borrow a vehicle from a friend, and later had to pay for a rental vehicle, which they continue to be forced to do, since the defendant continues to withhold the repossessed vehicle. The debtors have expended several hundred dollars in securing alternative transportation, and those costs increase daily.

22. The debtors have suffered emotional distress, wounded feelings, actual damages, attorney s fees, sleepless nights, extreme anxiety, marital discord, embarrassment, and physical illness due to the willful and wanton disregard for their rights proximately caused by the actions of the creditor in this matter.

23. 11 USC section 541 identifies property of the estate as any property of the debtor however held and wherever located. Section 542 demands that any party holding such property turnover said property to the debtor, especially if it is necessary for an effective reorganization of the debtor's financial affairs. The vehicle in question is absolutely necessary for an effective reorganization, and the failure to turnover said vehicle should subject the creditor to sanctions including punitive damages under 11 USC section 105. This section allows the Court to issue any Orders it deems reasonable to carry out justice or enforce the Bankruptcy Code. This includes sanctioning a party for civil contempt for violation of the Bankruptcy Code or Rules to include payment of damages, and in appropriate circumstances punitive damages. **See, e.g. In re Jove Engineering, Inc., 92 F.3d 1539 (11Cir. 1996). See also, Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 506-507 (9th Cir. 2002)** in which the Court held that the Court's contempt authority under section 105(a) was an appropriate remedy for a violation of section 542(a), which requires that any party holding property of the bankruptcy estate to immediately turnover said property.

24. Since the filing of the petition on March 27, 2009, the debtors have been without the use of their sole vehicle, which has been wrongfully withheld in violation of 11 USC section 542 for thirteen consecutive days. In spite of multiple verbal and written requests to turnover the vehicle, the creditor has willfully refused to do so. As a proximate result of that failure, the debtors have suffered the inconvenience of having no transportation for wife to travel to and from her employment, for husband to transport son to and from his extracurricular activities, and in case of emergency. The debtors have further been forced to seek other means of transportation all the while suffering embarrassment, costs associated with other transportation, the embarrassment of advising their son that they have no vehicle with which to transport him to baseball practice, that the vehicle had been repossessed with his baseball equipment in it, and

that in spite of husband appearing at the creditor's place of business to retrieve that equipment along with other personal possessions situated within the vehicle, the creditor refused to allow him to retrieve same in front of witnesses.

25. 11 USC section 542(a) clearly establishes, and it is settled law that once a bankruptcy petition is filed, any person holding property of the debtor or of the debtor's estate must surrender the property. This release of property is mandated under Bankruptcy law whether the property was taken before or after the bankruptcy has been filed. **See, e.g. United States v. Whiting Pools, Inc., 462 U.S. 198, 201. See also, In re Knaus, 889 F.2d 773, 775 (8th Cir. 1989).**

26. 11 USC section 105 gives the Bankruptcy Court broad discretion to sanction parties who violate Bankruptcy law to include actual damages, attorney's fees, sanctions including punitive damages. **See In re Jennings, case no. 01-02330, adversarial proceeding no. 01-80044**, whereby this Court sanctioned a car creditor for failing and refusing to proactively deliver to the debtor after his bankruptcy filing a vehicle that had been repossessed prior to the bankruptcy case after the debtor had requested the return of the vehicle. The South Carolina Bankruptcy Court ruled in that case that the language of section 542(a) mandates that an entity holding property of the debtor, who has filed bankruptcy **"shall deliver"** that property. It further stated that **"Courts examining this statutory language noted its proactive connotation and found that creditors have an "affirmative duty," "mandatory duty," or "obligation" to return property of the estate. California Employment Dev. Dep't v. Taxel (In re Del Mission Ltd), 98 F.3d 1147, 1151 (9th Cir. 1996).**

27. In his ruling in the case of **In re Jennings** cited above, the Honorable John E. Waites, Chief Bankruptcy Judge of the United States Bankruptcy Court for the District of South Carolina after much elaboration and analysis of the issues similar to the instant case stated that the majority rule in the United States is that debtors are entitled to turnover of their property immediately upon the filing of their bankruptcy case even if the property had been legally repossessed prior to the filing of the bankruptcy. **See Del Mission Ltd., 98 F.3d at 1151 (cited**

above). There are a number of cases that support this position. Moreover, Judge Waites also took this position in the case of **Green v. Wachovia Bank of South Carolina (In re Green) Adv. No 94-8200, at 4 (Bankr. D.S.C. Jan. 27, 1995).** Judge Waites granted immediate turnover of the debtor's property held by creditor upon debtor's demonstration of proof of insurance. The Honorable Wm Thurmond Bishop of this Court, now retired, took the same position in the case of **Mathews v. World Omni Financial Corporation (In re Mathews), and ordered damages. See 118 B.R. 398,399 (Bankr. D.S.C. 1989).**

28. The actions of the defendant also violate **11 U.S.C. section 362 (a) (i.e. the "automatic stay"), which is invoked immediately upon the filing of a bankruptcy petition.** This injunction prohibits certain actions by parties including creditors against debtors, who have filed bankruptcy. **Specifically, section 362(a)(3) prohibits a party from "exercising control over property of the estate." Subsection (a)(1) prohibits attempts by a party to recover a pre-bankruptcy claim from the debtor; subsection (a)(4) prohibits a party from enforcing any lien against property of the estate; subsection (a)(5) likewise does so; and subsection (a)(6) prohibits a party from any act to collect or recover a claim against the debtor that arose prior to the filing of the bankruptcy. Moreover, 11 U.S.C. section 362(k)(1) formerly known as 362(h) authorizes the Court to award damages to debtors, who can show two elements as follows: (1) First, there must have been injury proximately caused by a violation of the automatic stay. Second, the violation must have been "willful." See, e.g. Lovett v. Honeywell, Inc. 930 F. 2d 625, 628 (8th Cir. 1991) (so holding). By its terms, section 362(k) provides that an award of damages is <u>mandatory</u> in circumstances where a violation of the automatic stay has caused cognizable injury. See In re Del Mission, Ltd. 98 F.3d 1147, 1152 supra. so holding. Section 362(k) expressly provides that actual damages include a party's costs and attorney's fees. Further, punitive damages may be awarded under section 362(k). See e.g. In re Ketelsen, 880 F. 2d 990, 993 (8th Cir. 1989).**

WHEREFORE, the debtors request that this Honorable Court issue its Order holding the defendant in contempt, finding defendant willfully violated the automatic stay, mandating the immediate turnover of the 1995 Chevrolet Suburban at issue in this matter, and that the Court

hold a hearing on the debtors' request for it to sanction the creditor to include actual damages, attorney's fees, damages for emotional distress, costs involved with the matter, and punitive damages for its willful, wanton and reckless disregard for the rights of the debtor. The debtors request that this Court order any further relief as it deems just and proper.

Respectfully Submitted

_____

Robert H. Cooper DCID@5670
3523 Pelham Rd. Ste B
Greenville, SC 29615
(864) 271-991 phone
(864) 232-5236 facsimile
rhcooper@thecooperlawfirm.com

Dated this 8th day of April, 2009
Greenville, South Carolina